**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 13 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

        No. 00-2115

PAUL CONSTANTINE,

    Defendant-Appellant.

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-99-875-MV)

---

Roger A. Finzel, Assistant Federal Public Defender (Scott M. Davidson, Research and Writing Specialist, with him on the briefs), Albuquerque, New Mexico, for Defendant-Appellant.

Louis E. Valencia, Assistant U.S. Attorney (Norman C. Bay, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **SEYMOUR**, **PORFILIO** and **KELLY**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Paul Constantine pled guilty to one count of possession of an unregistered firearm and was sentenced to thirty-five months in prison. He appeals the district court's computation of his sentence and refusal to depart downward from the sentencing guidelines. We affirm.

# I

## Background

On the night of September 18, 1998, residents of a home in Albuquerque heard the sounds of a break-in as they sat in their bedroom watching television. They escaped through a window and called the police from a neighbor's home. Officers responding to the call discovered Mr. Constantine attempting to flee the scene. He was wearing a bulletproof vest and carrying a loaded .22 caliber handgun with an attached silencer. A search of his pants pockets uncovered extra ammunition, a knife, and an expandable baton. A stun gun and sledgehammer were found in his car. A second individual reportedly participated in the burglary along Mr. Constantine but was never apprehended.

After waiving his constitutional rights, Mr. Constantine told an officer that the home's residents owed him $18,000 and he had broken in that night to retrieve the money. He later told a federal agent that he was the real victim, as the residents had stolen cocaine and money from him in an earlier incident. He took

nothing during the break-in but damaged two doors, ransacked the owner's belongings, and shot a computer monitor in frustration when he was unable to find drugs or money.

Mr. Constantine was initially charged in New Mexico state court, where he pled guilty to aggravated burglary and *nolo contendre* to larceny. He then appeared in federal district court, where he pled guilty to one count of possession of an unregistered firearm in connection with the illegal homemade silencer attached to the handgun he carried during the burglary. The federal pre-sentence report recommended adding a four-level increase to his base offense level under section 2K2.1(b)(5) of the Sentencing Guidelines because the firearm was used or possessed in connection with a felony. Mr. Constantine objected, arguing his possession of the silencer was not "connected with" the offense of the burglary but was rather a symptom of the "over-preparation" he was compelled to perform because he suffers from obsessive-compulsive disorder. He also moved for downward departure based on his disorder and an assertion that the offense was an aberration from his normal behavior.

At sentencing, a psychologist testified that she had evaluated Mr. Constantine and diagnosed him with obsessive-compulsive disorder (OCD). She stated her belief that Mr. Constantine had brought the silencer to the burglary

because the disorder causes him to "over prepare" for events.[1] She explained that Mr. Constantine may logically understand certain behaviors are unnecessary or excessive but that he is compelled to engage in the behaviors nonetheless. Her evaluation led her to doubt "that Mr. Constantine would have considered using a silencer if not for his disorder." Aplt. Br., Attach. D at 6.

Mr. Constantine also testified at the sentencing hearing. He explained that he had been robbed of $18,000 about two months before the burglary attempt and that a friend later informed him that the robbers lived at the residence in question. The break-in was an attempt to recover the money that had been taken from him in the earlier incident. When the government sought to question him about the details of the earlier incident, however, he invoked his Fifth Amendment right against self-incrimination and refused to answer. Although the court explained that the information was essential to its ability to determine Mr. Constantine's credibility and to evaluate the reasonableness of his behavior during the break-in, he continued to assert his Fifth Amendment right.

The court denied Mr. Constantine's motion for reduction on the basis of aberrant behavior, concluding the conduct was not a spontaneous or thoughtless gesture because it involved significant amounts of planning. The court further

_____

[1] The term "over-preparation" was the psychologist's description of the situation; it is not a term of art generally associated with OCD.

found the act of bringing the handgun and silencer was related to the offense and not merely a product of obsessive-compulsive over-preparation. After adjusting Mr. Constantine's sentence upward under section 2K2.1(b)(5) and downward for acceptance of responsibility and assistance to the investigation, the court calculated a total offense level of nineteen and fixed a sentence of thirty-five months.

On appeal, Mr. Constantine argues (1) the enhancement for possessing the silencer "in connection with" a felony was improperly applied; (2) his obsessive-compulsive disorder should have been considered as a mitigating factor; (3) the court should have allowed a downward departure in consideration that the offense was a single aberrant act; and (4) the court improperly penalized him for invoking his Fifth Amendment right during the sentencing hearing. We affirm.

## II

### Enhancement

The court enhanced Mr. Constantine's sentence under section 2K2.1(b)(5) of the Guidelines, which provides a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." The definition of "firearm" includes "any firearm muffler or silencer," *id.,* comment. (n.1), and the residential burglary was an applicable felony offense,

*see id.*, comment. (n.7).  On appeal, Mr. Constantine does not dispute these definitions but rather the finding that his silencer was "used . . . in connection with" the break-in.[2]

We have held that the section 2K1(b)(5) enhancement is appropriate "if the weapon facilitated or had the potential to facilitate the underlying felony." *United States v. Browning*, 252 F.3d 1153, 1160-61 (10th Cir. 2001) (quoting *United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir. 1998)).  Because the Guidelines themselves provide little direction regarding the proper definition of "in connection," we have developed this standard in reliance on judicial interpretations of 18 U.S.C. § 924(c), which requires that a firearm be used or possessed "in relation to" a drug trafficking crime.  *See Bunner*, 134 F.3d at 1006. In discussing section 924(c), the Supreme Court has explained that the "phrase 'in

---

[2] Mr. Constantine also argues the government had a burden to prove the connection by clear and convincing evidence because the enhanced sentence was significantly longer than the unenhanced sentence.  We have previously "recognize[d] the strong argument that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof." *United States v. Washington*, 11 F.3d 1510, 1516 (10th Cir. 1993).  The Supreme Court has left the choice of standard to the discretion of the courts of appeals, however, *see United States v. Watts*, 519 U.S. 148, 156 n.2 (1997), and within the Tenth Circuit the arguments for higher standards are    "foreclosed by binding precedent," *United States v. Valdez*, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000) (citing *Washington*, 11 F.3d at 1516, which applied preponderance standard despite sentence enhancement from approximately twenty-year term to life in prison). We therefore proceed under the preponderance standard applicable within this circuit.

relation to,' thus at a minimum, clarifies that the firearm must have some purpose or effect with respect to the . . . crime; its presence or involvement cannot be the result of accident or coincidence." *Smith v. United States*, 508 U.S. 223, 238 (1993); *see also United States v. Gomez-Arrrellano*, 5 F.3d 464, 466-67 (10th Cir. 1993) (citing *Smith's* definition in section 2K.2(b)(5) context). The requirement is met, for example, if the presence of the gun "facilitates the offense by providing a means of protection or intimidation." *Smith*, 508 U.S. at 238.

There is little doubt that a gun fitted with a silencer could provide the means of protection and intimidation during a residential burglary. An ATF agent testified at sentencing that although the silencer provided only a six percent reduction in firing noise, the reduction would be sufficient to ensure a person standing outside the home could not hear a shot. Avoiding detection also facilitates commission of a burglary. Furthermore, the government makes an interesting argument related to Mr. Constantine's OCD, contending that "if the silencer satisfied or eased some obsession in Constantine, it facilitated the commission of the burglary." Aplee. Br. at 31. Considering the totality of the circumstances, we agree with the district court that the silencer facilitated or had the potential to facilitate the burglary, and was thus used "in connection with" the felony for purposes of section 2K.2(b)(5).

## III

## Downward Departures

Mr. Constantine argues the sentencing court erred in denying his motions for downward departure based the effects of his OCD and the aberration from his normal behavior. With regard to Mr. Constantine's request for downward departure due to his OCD, the court first construed this as a motion for departure based on diminished capacity under section 5K2.13 of the Guidelines. Section 5K2.13 provides for sentences below the applicable Guidelines range when a defendant commits an offense "while suffering from a significantly reduced mental capacity." However, this provision is not applicable to crimes "involv[ing] actual violence or a serious threat of violence," *id*., and thus the court correctly found it inapplicable to Mr. Constantine because of the threat of violence inherent in his firearm conviction.

The court then went on to address Mr. Constantine's OCD as an independent basis for potential departure.[3] The court was "not persuaded that the condition caused Mr. Constantine to take with him a silencer," believing the act of bringing the silencer was instead a reaction to the circumstances of the earlier

---

[3] Section 5K2.0 of the Guidelines allows downward departure in any situation not enumerated in the Guidelines. "The decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis." *Id*.; *see also Koon v. United States*, 518 U.S. 81 (1996) (establishing four-part standard to guide departure decision).

burglary. Aplt. Br., Attach. B at 123. This was not a legal conclusion that the court had no discretion to depart from the Guidelines, but a factual conclusion that departure was not warranted under the circumstances at issue. "It is well settled that an appellate court lacks jurisdiction to review a sentencing court's refusal to depart from the Sentencing Guidelines when the sentencing court was aware that it had the authority to depart but declined to exercise that authority and grant the departure." *United States v. Fagan*, 162 F.3d 1280, 1282 (10th Cir. 1998).

Turning to the requested aberrant behavior departure, it is true that "[w]ithout limitation, under our case law, the aberrant nature of a criminal defendant's offense conduct may properly be considered as a mitigating factor in a downward departure decision." *United States v. Benally*, 215 F.3d 1068, 1072 (10th Cir. 2000) (citations and internal quotations omitted). Nevertheless, the sentencing court held the conduct in question here did not fall within the definition of aberrant behavior. In particular, the burglary was not "a spontaneous and seemingly thoughtless gesture or incident" but instead "involved quite a bit of planning," including "many drive-bys" of the home and "a decision to bring somebody else along to assist." Aplt. Br., Attach. B at 124. In general, a "district court is in the better position to determine whether the defendant's offense conduct is out of character for that individual. Accordingly, the district

court's resolution of this largely factual question is due substantial deference." *United States v. Jones*, 158 F.3d 492, 500 (10th Cir. 1998). On the other hand, the court's decision may have been based on a misunderstanding of the applicable case law, since "this circuit has never held that application of the aberrant behavior downward departure requires the crime at issue to have been spontaneous." *United States v. Garcia*, 182 F.3d 1165, 1176 (10th Cir. 1999).

Even leaving aside the question of spontaneity and planning, however, there is nothing in this record to support an aberrant behavior departure. An aberrant behavior departure must be based upon something other than the fact that the act "is merely a first offense." *Benally,* 215 F.3d at 1074. "Stated differently, the permissible factors in this context must illustrate some unique circumstance—some element of abnormal or exceptional behavior—beside the fact the defendant has never before committed the crime." *Id.* One abnormal circumstance is Mr. Constantine's OCD, but the sentencing court determined that the disorder itself did not impel Mr. Constantine to commit the crimes. The only other exceptional circumstance was the fact of the earlier burglary, but Mr. Constantine did not provide enough facts regarding the burglary to support any application for downward departure. Even if he had, we would not condone such dangerous and illegal attempts at retribution or restitution. Accordingly, we conclude the district court did not err in refusing to grant Mr. Constantine a

downward departure based on aberrant behavior.

## IV

## Fifth Amendment

Finally, Mr. Constantine argues the questions about the earlier burglary posed to him at sentencing violated his Fifth Amendment right against self-incrimination. He contends the circumstances surrounding the earlier burglary bore no relationship to the issues before the court at sentencing and thus the information to be gained from the challenged questions could serve no legitimate purpose. He compares his case to that of *Bertrand v. United States*, 467 F.2d 901, 902 (5th Cir. 1972) (per curiam), in which a court impermissibly forced a defendant into a choice between waiving his right against self-incrimination and receiving a longer sentence. Ultimately, he argues, the effect of the questions was to "shift[] to Constantine the Government's burden to prove that the silencer was used in connection with the burglary." Aplt. Br. at 21.

This burden-shifting argument is somewhat perplexing, in that the sentencing court did not seek the information in relation to its findings that Mr. Constantine used the silencer in connection with a felony. Rather, as the court expressly stated, it sought the details of the earlier burglary in order to assess Mr. Constantine's *motion for downward departure* based on his contention that the

use of the silencer and other protective measures were merely a symptom of the over-preparation characteristic of his OCD. *See* Aplt. Br., Attach. C at 68-69 ("I'm trying to figure out whether the downward departure is appropriate or not, and I'm kind of hampered in my ability to evaluate that."). The court took pains to state for the record why information on the earlier robbery was necessary to consideration of the downward departure, explaining:

> If the previous robbery that apparently, according to the proffer, not under testimony, was two months approximately before this, and if this was related to—allegedly related to a robbery, the credibility of a witness is always at issue, especially in a motion for downward departure. Here we are—I am being requested to find that this burglary is related to a previous incident which [Mr. Constantine] is not willing to testify about for possibly good reasons. Then the violent or not violent nature of the attack, of the robbery, is important in determining whether he in fact overprepared in this burglary certainly, it seems to me, and the reason why I wanted to inquire, is that if the circumstances of the previous robbery were quite violent, left Mr. Constantine in fear of his life, were brazen . . . then I could judge Mr. Constantine's conduct in terms of the bulletproof vest, in terms of the dark clothing he utilized, in terms of the silencer. I could better put that situation in context and be able to assess the testimony . . . [that] the utilization of the silencer [was an] overpreparation that [was] characteristic of his illness.

*Id*. at 71.

Criminal defendants undoubtedly retain a full set of Fifth Amendment rights at sentencing, including the guarantee that silence will not be held against them. *Mitchell v. United States*, 526 U.S. 314, 330 (1999). We see no merit, however, to Mr. Constantine's contention that the court enhanced his sentence as

-12-

retaliation for his refusal to answer questions on the earlier robbery. Rather, as a

consequence of his silence he was unable to carry his own burden of proving he

was entitled to the requested downward departure.[4] *See United States v.*

*Archuleta*, 128 F.3d 1446, 1449 (10th Cir. 1997) ("The defendant bears the

burden of proving he is entitled to a downward departure."); *see also United*

*States v. Espinoza*, 771 F.2d 1382, 1404 (10th Cir. 1985) (where court recognized

right to silence but explained how it hampered sentencing determination, court's

"comments [were] proper and [did] not penalize defendants for exercising their

Fifth Amendment rights"). Because the burden was his, the choice between

---

[4] By seeking the downward departure, Mr. Constantine was responsible for introducing any facts that might support that departure. The earlier burglary was one such fact, and he introduced the fact of that burglary through his testimony. Although we find Mr. Constantine's Fifth Amendment rights were not violated, in addition he arguably *waived* his right to silence regarding the further details of that burglary. "It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell*, 525 U.S. at 321. A defendant witness "determines the area of disclosure and therefore of inquiry," and thus "[t]he privilege is waived for the matters to which the witness testifies." *Id*. The Supreme Court has explained that witnesses "may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry," adding that "[t]he illogic of allowing a witness to offer only self-selected testimony should be obvious even to the witness." *Id*. at 322. Mr. Constantine's attorney recognized these dangers, advising him not to give details of related events for fear of "opening the door" to potentially incriminating questions. Aplt. Br., Attach. C at 66-68. With regard to details of the earlier robbery itself, however, those considerations came too late; Mr. Constantine had already introduced the robbery into evidence.

invoking his right against self-incrimination and proving the applicability of mitigating circumstances was also his.  The situation lacks the element of external compulsion necessary to establish a Fifth Amendment violation.  *See generally Lile v. McKune*, 224 F.3d 1175, 1188 (10th Cir. 2000) (compulsion requires imposition of penalty, and denial of downward adjustment not "penalty" for Fifth Amendment purposes).

Mr. Constantine's sentence is **AFFIRMED**.