FILED
United States Court of Appeals
Tenth Circuit

August 25, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE FERNANDO RIVAS-MACIAS,

Defendant-Appellant.

No. 06-2274

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 05-CR-2764-JB)**

---

Mark T. Baker (Little V. West with him on the briefs), Long, Pound & Komer, P.A., Santa Fe, NM, for Appellant.

Terri J. Abernathy, Assistant United States Attorney (Larry Gomez, United States Attorney, with her on the briefs), Las Cruces, NM, for Appellee.

---

Before **HENRY**, Chief Judge, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

A grand jury charged Defendant Jose Fernando Rivas-Macias with: (1) conspiracy to possess, with the intent to distribute, five hundred grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 846; and (2) possessing, with

the intent to distribute, five hundred grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1). After a two-day trial, a petit jury convicted Defendant on both counts. Defendant raises two points of error on appeal.

First, Defendant argues the district court infringed his right to present a defense when it erroneously concluded that one of Defendant's coconspirators, Alvaro Jimarez, retained his Fifth Amendment privilege against self-incrimination. Jimarez pled guilty shortly before Defendant's trial. Subsequently, at the time of Defendant's trial, Jimarez's sentencing had not yet occurred. Jimarez had, however, debriefed the government on several occasions, in an attempt to qualify for a sentence below the mandatory, statutory minimum under 18 U.S.C. § 3553(f). Defendant contends that by pleading guilty, and giving these unsworn statements, Jimarez waived his Fifth Amendment privilege. Consequently, Defendant claims the district court's refusal to compel Jimarez to testify at his trial was in error.

Second, Defendant Rivas-Macias raises an alternative argument, suggesting the district court erred in failing, sua sponte, to continue his trial until after Jimarez's sentencing. At that point, Defendant suggests, Jimarez's Fifth Amendment privilege would no longer apply. Our jurisdiction over this appeal arises under 28 U.S.C. § 1291. Finding no merit to Defendant's points of error, we **affirm**.

I.

United States Border Patrol agents took Defendant Rivas-Macias, and a group of four other adults, into custody on an isolated roadway near Hatch, New Mexico.

2

The suspects were traveling in two vehicles: a maroon Taurus and a gold Accord. Defendant Rivas-Macias was seated in the backseat of the Accord. Alvaro Jimarez, the driver of the Accord, and his cousin occupied the front of the car. Traveling in the Taurus were Sergio Serra, the driver, along with his wife and two small children. Both drivers consented to a canine inspection of their respective vehicles. A canine alerted underneath the rear of the Taurus. Subsequently, a border patrol agent discovered an "after-market compartment" in that location, which had recently been covered in black spray paint. Thereafter, agents transported both vehicles, and their passengers, to a border patrol checkpoint for further investigation.

Inside the compartment, which was rigged with an electronic opening device, agents found seven bundles of cocaine wrapped in various substances. A canine inspection of the Honda resulted in the discovery of a similar compartment. Although the compartment in the Honda was empty, agents noted that it was lined with aluminum tape, which drug smugglers often use to insulate spaces in which drugs are stored.[1]

## II.

A grand jury charged Jimarez, Defendant Rivas-Macias, and Serra with possessing cocaine, with the intent to distribute, and conspiracy to possess cocaine,

---

[1] Agent Dooley testified at Defendant's trial that aluminum tape serves to cushion bundles of drugs during transport, while helping to contain the odor of illegal substances.

with the intent to distribute. Jimarez initially pled not guilty, but later entered an unconditional guilty plea. Serra entered into a plea agreement with the Government. Defendant Rivas-Macias pled not guilty and proceeded to trial.

Serra served as the Government's primary witness against Defendant Rivas-Macias at trial. Serra testified that he asked Jimarez if Jimarez knew how Serra could make some money. Jimarez put Serra into contact with a man named Carlos. Serra subsequently made at least two trips to Denver for Carlos, once to transport cocaine and once to pick up a shipment of money that never materialized. During Serra's first drug run to Denver, Defendant Rivas-Macias followed him in a separate vehicle. Defendant then led Serra to an apartment complex where he delivered the cocaine.

Serra testified that Defendant Rivas-Macias was again present when Carlos gave him the maroon Taurus, which Serra was driving when border patrol agents took him into custody. According to Serra, the conspirators planned for Serra to switch vehicles with Jimarez and Defendant near Hatch, New Mexico. Jimarez and Defendant Rivas-Macias would then take the Taurus – laden with cocaine – to Denver, while Serra and his family took the Honda on a legitimate business trip elsewhere. According to Serra, after authorities took Defendant Rivas-Macias and Serra into custody, Defendant warned Serra not to rat him out.

In order to rebut Serra's testimony, Defendant Rivas-Macias took the stand in his own defense. Defendant stated that he met Jimarez at a party. On the night in

4

question, Defendant explained that he believed he was traveling to Albuquerque, with Jimarez, to inquire about a construction job. Defendant disclaimed any knowledge of a man named Carlos and denied telling Serra not to incriminate him.

Faced with this conflicting testimony, the jury had to determine whether Serra or Defendant Rivas-Macias was the more credible witness. Based on the content of Jimarez's debriefing statements, Defendant's trial counsel had reason to believe that Jimarez's version of events differed significantly from Serra's.[2] Consequently, Defendant's trial counsel planned to use Jimarez's testimony to impeach Serra. Jimarez was, in fact, on the Government's witness list. Before the Government called Jimarez to the stand, however, his attorney notified the district court that Jimarez would invoke his Fifth Amendment privilege against self-incrimination, if called to the stand. Faced with precedent stating that a party may not call a witness to the stand merely to compel him to invoke his Fifth Amendment privilege in front of the jury, the district court decided to examine Jimarez outside of the jury's presence.[3] But Defendant's trial counsel declined this course of action, indicating

---

[2] The substance of Jimarez's statements to the Government is not reflected in the record on appeal.

[3] Because a jury may not draw any legitimate inferences from a witness' decision to exercise his Fifth Amendment privilege, we have repeatedly held that neither the prosecution nor the defense may call a witness to the stand simply to compel him to invoke the privilege against self-incrimination. See, e.g., United States v. Costrena-Jaime, 285 F.3d 916, 931 (10th Cir. 2002); United States v. Crawford, 707 F.2d 447, 449 (10th Cir. 1983); United States v. Martin, 526 F.2d 485, 487 (10th Cir. 1975); United States v. Coppola, 479 F.2d 1153, 1160 (10th

(continued...)

5

to the court:  (1) the parties had agreed not to put Jimarez on the stand and (2) the

Government planned to release Jimarez from its subpoena.[4]  Subsequently, the

district court did not examine Jimarez concerning his invocation of the Fifth

Amendment privilege.[5]  Ultimately, neither party called Jimarez to the stand and the

petit jury convicted Defendant Rivas-Macias on all counts.

III.

We first consider Defendant's assertion that the district court erred in

---

[3](...continued)
Cir. 1973).

[4] Defendant's trial counsel stated:  "We're not even going to bother.  We're not going to even put him on the stand.  I believe he is going to be released at this point from the [G]overnment's subpoena."

[5] The district court must decide, in the first instance, whether a witness' invocation of his Fifth Amendment privilege is justified.  See Costrena-Jaime, 285 F.3d at 931; United States v. Nunez, 668 F.2d 1116, 1121 (10th Cir. 1981); see also Hoffman v. United States, 341 U.S. 479, 487 (1951) (explaining that the "trial judge in appraising" an individual's invocation of the privilege "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence").  No standardized procedure exists for making this determination.  See Hoffman, 341 U.S. at 486-87.  Rather, the Supreme Court has generally charged a district court with sustaining an individual's invocation of the privilege, regardless of setting, where it is evident from the implication of a question that a responsive answer, or explanation as to why it cannot be answered, "might be dangerous because injurious disclosure could result."  Id. at 487; see also Emspak v. United States, 349 U.S. 190, 197 (1955) (stating that the individual invoking the privilege is not required "to disclose the precise hazard which he fears").  To avoid the general prohibition on calling a witness to the stand merely to compel him to invoke the Fifth Amendment privilege, however, a common practice has developed whereby the district court examines a witness invoking the privilege outside of the presence of the jury.  See United States v. Melchor Moreno, 536 F.2d 1042, 1046 (5th Cir. 1976) (describing this practice); see also 1 McCormick on Evidence § 132 (6th ed. 2006). The district court properly attempted to employ that practice in this case.

6

upholding Jimarez's right to invoke his Fifth Amendment privilege against self-incrimination, thus infringing upon Defendant's constitutional right to present a defense.[6] Our review of matters of constitutional law is de novo. See United States v. Dowlin, 408 F.3d 647, 659 (10th Cir. 2005). Thus, we must take a "fresh, independent" look at the question at bar. Timmons v. White, 314 F.3d 1229, 1234 (10th Cir. 2003).

## A.

At the heart of this case lies two important constitutional values: (1) a witness' privilege not to incriminate himself, and (2) a defendant's right to establish a defense.[7] The former is grounded in the Fifth Amendment, which states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."[8]

---

[6] Defendant failed to press the district court for an explicit ruling on this constitutional issue. Consequently, one could question the appropriateness of our review. See United States v. Duncan, 242 F.3d 940, 950 (10th Cir. 2001) (noting that we generally refuse to consider on appeal issues "not presented, considered, and decided by the district court"). Because the Government failed to note this concern and the Defendant has raised a pure question of law, the proper resolution of which is certain, we exercise our discretion to hear and resolve this question. See id.

[7] A defendant's collective right to testify, present defense witnesses, and cross-examine Government witnesses is commonly referred to as the right to present or establish a defense. See United States v. Markey, 393 F.3d 1132, 1135 (10th Cir. 2004).

[8] Although the language of the Fifth Amendment speaks in terms of an individual serving as a "witness against himself," courts have long held that the privilege against self-incrimination "protects a witness as well as an accused party." 8 Wigmore on Evidence § 2252 (McNaughton rev. 1961). Thus, "it is immaterial," for purposes of the Fifth Amendment, "whether the prosecution" at hand is "against"
(continued...)

7

U.S. Const. amend. V. The latter is predicated on the Sixth Amendment's confrontation and compulsory process clauses, as well as the Fifth Amendment's guarantee of due process. See United Sates v. Markey, 393 F.3d 1132, 1135 (10th Cir. 2004). Here, we are faced with the tension that arises when these two pillars of our criminal justice system collide.

On the one hand, an individual's privilege against self-incrimination, rooted in our society's "traditional respect for the individual," Maness v. Meyers, 419 U.S. 449, 461 (1975), serves to ensure the continued vitality of our accusatorial system of justice. See Garner v. United States, 424 U.S. 648, 655 (1976); see also Rogers v. Richmond, 365 U.S. 534, 541 (1961) (affirming that "ours is an accusatorial and not an inquisitorial system" of justice). The privilege safeguards against the recurrence of the evils associated with the Inquisition and the Star Chamber, see Michigan v. Tucker, 417 U.S. 433, 440 (1974), by ensuring the Government produces evidence sufficient to convict an individual through the "independent labor of its officers," rather than the "simple cruel expedient of forcing" incriminating information from that individual's own lips.[9] Mitchell v. United States, 526 U.S.

---

[8](...continued)
the individual invoking the privilege. Id.; see also Roach v. Nat'l Transp. Safety Bd., 804 F.2d 1147, 1151 (10th Cir. 1986).

[9] Given the central importance of the accusatorial nature of our system of justice, the privilege against self-incrimination applies "in any proceeding," regardless of whether it is "civil or criminal, administrative or judicial, investigatory or adjudicatory." Maness, 419 U.S. at 464.

314, 326 (1999).

Of course, an individual cannot avoid his duty to testify merely by voicing his own fears of self-incrimination and reciting the Fifth Amendment's familiar terms. See Hoffman v. United States, 341 U.S. 479, 486 (1951); United States v. Castro, 129 F.3d 226, 229 (1st Cir. 1997). For the privilege to apply, an individual must face "some authentic danger" of self-incrimination. Castro, 129 F.3d at 229; see also Zicarelli v. N.J. State Comm'n of Investigation, 406 U.S. 472, 478 (1972) ("It is well established that the privilege protects against real dangers, not remote and speculative possibilities."); Ullmann v. United States, 350 U.S. 422, 439 (1956) (clarifying that the privilege's "sole concern" is with the "danger to a witness forced to give testimony leading to the infliction of 'penalties' affixed" to "criminal acts"). When no further danger of incrimination is present, the privilege ceases to apply. See Mitchell, 526 U.S. at 326; see also Brown v. Walker, 161 U.S. 591, 600 (1896) (stating the prohibition against an individual being "compelled to testify against himself presupposes a legal detriment to the witness arising from the exposure"). Accordingly, the privilege generally remains available, absent a valid waiver, until an individual's "sentence has been fixed and the judgment of conviction has become final." Mitchell, 526 U.S. at 326; see also Maness, 419 U.S. at 466 (noting an individual may waive the privilege); Rogers v. United States, 340 U.S. 367, 373-74 (1951) (same).

On the other hand, a defendant's right to present a defense is also a keystone

of our legal system. See United States v. Hernandez-Hernandez, 519 F.3d 1236, 1238 (10th Cir. 2008). Indeed, few rights are more fundamental than a defendant's right to testify, present witnesses in his own defense, and cross-examine witnesses against him. See id. at 1239; Markey, 393 F.3d at 1135. We have repeatedly recognized, however, that the right to present a defense, "while fundamental, is not absolute." Hernandez-Hernandez, 519 F.3d at 1238; see also United States v. Serrano, 406 F.3d 1208, 1215 (10th Cir. 2005); Markey, 393 F.3d at 1135; United States v. Bautista, 145 F.3d 1140, 1151 (10th Cir. 1998). In appropriate cases, a defendant's right to present a defense must bow to accommodate legitimate, competing interests in the criminal trial process. See Serrano, 406 F.3d at 1215. Traditional testimonial privileges – including the Fifth Amendment privilege against self-incrimination – represent legitimate trial interests sufficient to force a defendant's right to present a defense to give way.[10] See id.; Valdez v. Winans, 738 F.2d 1087, 1089 (10th Cir. 1984). Accordingly, if Jimarez retained his Fifth Amendment privilege against self-incrimination, Defendant cannot establish that his right to present a defense was unduly impaired.

## B.

Defendant Rivas-Macias contends the Fifth Amendment privilege was not

---

[10] Of course, substantial interference, by the Government, with a defense witness' decision to claim the privilege violates a defendant's due process rights. See Crawford, 707 F.2d at 449. Defendant has not alleged the Government engaged in such unconstitutional interference here.

available to Jimarez after he pled guilty and gave several unsworn, debriefing statements to authorities prior to Defendant's trial. Whether an individual may properly invoke the privilege against self-incrimination is a question of law, which we review de novo. See United States v. Bautista, 145 F.3d 1140, 1150 (10th Cir. 1998). In this case, to determine whether the privilege was available to Jimarez we must ascertain: (1) whether Jimarez faced some authentic danger of further incriminating himself by testifying at Defendant's trial before his sentencing, and (2) whether Jimarez waived his Fifth Amendment privilege by giving several unsworn, debriefing statements to authorities in an effort to qualify for a sentence below the mandatory minimum prescribed by statute. See 18 U.S.C. § 3553(f).

1.

We first examine whether Jimarez faced some authentic danger of self-incrimination in testifying, before his sentencing, at Defendant's trial. The Supreme Court has "broadly construed" the protection afforded by the Fifth Amendment privilege. Maness, 419 U.S. at 461; see also Hoffman, 341 U.S. at 486 (instructing lower courts to give the privilege a "liberal construction"). As a result, the constitutional guarantee against testimonial compulsion extends not only to "answers that would in themselves support a conviction," Hoffman, 341 U.S. at 486, but also to information that would "furnish a link in the chain of evidence that could lead to prosecution." Maness, 419 U.S. at 461.

Not much is required, therefore, to show an individual faces some authentic

11

danger of self-incrimination, see Castro, 129 F.3d at 229, as the privilege "extends to admissions that may only *tend* to incriminate." Emspak v. United States, 349 U.S. 190, 197 (1955) (emphasis added). Accordingly, an individual does not lose his right to claim the Fifth Amendment privilege merely because "a successful prosecution is unlikely to add to the punishments" he already faces for "other crimes." United States v. Silverstein, 732 F.2d 1338, 1346 (7th Cir. 1984). To the contrary, we will uphold an individual's invocation of the privilege against self-incrimination unless it is "perfectly clear, from a careful consideration of all the circumstances in the case," that the witness "is mistaken" and his answers could not "possibly have" a "tendency to incriminate." Hoffman, 341 U.S. at 488; see also Costrena-Jaime, 285 F.3d 916, 931 (10th Cir. 2002); United States v. Nunez, 668 F.2d 1116, 1121 (10th Cir. 1981).

Defendant Rivas-Macias cannot establish, with perfect clarity, that Jimarez's testimony at Defendant's trial would have had no tendency to further incriminate him. The Supreme Court has recognized that an individual whose sentence "has not yet been imposed" has a "legitimate fear of adverse consequences" from testifying in a related judicial proceeding. Mitchell, 526 U.S. at 326. Consequently, the law is clear that the Fifth Amendment privilege applies at sentencing.[11] See id. at 326-

---

[11] See Mitchell, 526 U.S. at 330 ("The [G]overnment retains the burden of proving facts relevant to the crime at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege.").

27; see also United States v. Garcia, 78 F.3d 1457, 1463 (10th Cir. 1996). Indeed, the privilege against testimonial compulsion normally extends to an individual until his or her "sentence has been fixed and the judgment of conviction has become final." Mitchell, 526 U.S. at 326. Because Jimarez faced an authentic danger of further incriminating himself by testifying at Defendant's trial, we conclude he properly invoked the Fifth Amendment privilege against self-incrimination.[12] See

---

[12] As the First Circuit cogently explained:

"We give short shrift to [Defendant's] contention that the district court had an obligation to compel answers and then to forestall self-incrimination by severely limiting the scope of the government's inquiry on cross-examination. We recognize, as [Defendant] asserts, that the Sixth Amendment assures a criminal defendant of the right to mount a defense – but that right must coexist with the government's right to test the truth of testimony proffered by the defense through the medium of cross examination."

. . .

. . . [O]n cross-examination, the government most assuredly would have explored the extent to which [Jimarez] himself was involved in the conspiracy in order to test his level of familiarity with the players. Such cross-examination would have required [Jimarez] to testify about any and all narcotics transactions that occurred in or about the same time frame. Though [Jimarez] could not be prosecuted again for the conspiracy, he was not shielded from criminal liability for any substantive crimes which may have been the object of, or which were committed in the course of, that conspiracy.

. . .

. . . [W]hen honoring the Fifth Amendment privilege will preclude or unfairly circumscribe cross-examination as to non-collateral matters – and by "non-collateral matters" we mean matters that are both within the scope of the direct examination and of consequence to the resolution of the issues in the case – it is fully within the trial court's discretion to sustain the claim of privilege and bar the witness's

(continued...)

13

United States v. Bahadar, 954 F.2d 821, 824 (2d Cir. 1992) (discussing the dangers an individual, who pled guilty, would face by testifying at the trial of a co-defendant before his sentencing).

2.

Next, we must determine whether Jimarez waived his Fifth Amendment privilege by pleading guilty and giving several unsworn, debriefing statements to the Government prior to Defendant's trial. An individual may lose the right to claim the Fifth Amendment privilege in three distinct ways. First, because the privilege "is not a self-executing mechanism; it can be affirmatively waived, or lost" if an individual fails to assert it "in a timely fashion." Maness, 419 U.S. at 466; see also Emspak, 349 U.S. at 196 (noting "the privilege against self-incrimination must be claimed"). Here, Defendant does not dispute that Jimarez timely claimed the Fifth Amendment privilege.

Second, the privilege may also dissipate if the Government gives the individual immunity, such that he is protected from the "use of his compelled answers" and all "evidence derived therefrom in any subsequent criminal case in

_____

12(...continued)
testimony altogether.

Castro, 129 F.3d at 230-31; see also Nunez, 668 F.2d at 1121 (noting that where "cross-examination is restricted by the competing Fifth Amendment right of [a] witness, it may be necessary to strike all or a part of the direct testimony of that witness"); United States v. Morgan, 757 F.2d 1074, 1077 (10th Cir. 1985) (same).

14

which he is a defendant." Lefkowitz v. Turley, 414 U.S. 70, 78 (1973). The Government did not grant Jimarez such immunity here. Third, an individual may lose his right to claim the privilege if, in a single proceeding, he voluntarily testifies about a subject and then invokes the privilege when asked to disclose the details.[13] See Mitchell, 526 U.S. at 321; Rogers, 340 U.S. at 372-73; United States v. Constantine, 263 F.3d 1122, 1128 n.4 (10th Cir. 2001); Nunez, 668 F.2d at 1121 n.2. In such cases, the "privilege is waived for the matters to which the witness testifies, and the scope of the wavier is determined by the scope of relevant cross-examination." Mitchell, 526 U.S. at 321; see also Constantine, 263 F.3d at 1128 n.4. But see Emspak, 349 U.S. at 198 (recognizing that courts must "indulge every reasonable presumption against" a testimonial waiver of the Fifth Amendment privilege).

The Supreme Court has explained that pleading guilty to a crime is not analogous to the type of selective admission capable of waiving the privilege against self-incrimination. See Mitchell, 526 U.S. at 322-23. Far from voluntarily putting a matter into dispute and then attempting to invoke the privilege against testimonial compulsion, an individual who pleads guilty to a crime takes "matters out of dispute" by "confirming the prosecution's version of the facts." Id. at 323. We thus squarely

---

[13] "Requiring full disclosure of details after a witness freely testifies as to a criminating fact does not rest upon a further 'wavier' of the privilege against self-incrimination." Rogers, 340 U.S. at 374. The witness has "already 'waived' her privilege of silence when she freely" answers "criminating questions." Id.

15

reject the proposition that an individual waives the Fifth Amendment privilege by pleading guilty to a crime. See id. at 321; Garcia, 78 F.3d at 1463.

That leaves Defendant's claim that Jimarez's unsworn statements to authorities, prior to Defendant's trial, waived his right to claim the Fifth Amendment privilege, at least to the extent of his revelations to the Government. A witness' testimonial waiver of the privilege is only effective, however, if it occurs in the *same proceeding* in which a party desires to compel the witness to testify. See Constantine, 263 F.3d at 1128 n.4 ("It is well established that a witness, *in a single proceeding*, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details.") (emphasis added) (quoting Mitchell, 526 U.S. at 321). Because Jimarez refused to testify at Defendant Rivas-Macias' trial, the proceeding at issue here, Defendant cannot establish that Jimarez engaged in a testimonial wavier of the privilege.[14]

Defendant's argument to the contrary is unpersuasive. The privilege against

---

[14] See, e.g., United States v. Licavoli, 604 F.2d 613, 623 (9th Cir. 1979) ("It is settled that a waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs."); United States v. Yurasovich, 580 F.2d 1212, 1220 (3d Cir. 1978) (acknowledging that it is "well settled" that "a person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it (the privilege) as to the same matter in a subsequent trial or proceeding"); United States v. Housand, 550 F.2d 818, 821 n.3 (2d Cir. 1977) (stating that an individual's testimony to a Grand Jury "did not waive his right to claim privilege at trial [in] a separate proceeding"); United States v. Cain, 544 F.2d 1113, 1117 (1st Cir. 1976) ("It is hornbook law that the waiver is limited to the particular proceeding in which the witness appears.").

self-incrimination protects *against* a party forcing an individual to adopt, at trial, "his unsworn out-of-court confession." Silverstein, 732 F.2d at 1347; see also United States v. James, 609 F.2d 36, 45 (2d Cir. 1979) (ruling that an individual "had not waived his privilege" by making "previous statements to the FBI and the grand jury" because a "waiver of the privilege in one proceeding does not affect a witness' rights in another proceeding"); United States v. Diecidue, 603 F.2d 535, 552 (5th Cir. 1979) (holding an individual's "admission to a Government agent prior to trial that he had previously committed perjury did not waive his privilege to invoke the Fifth Amendment as to that matter" at trial). That is exactly what Defendant Rivas-Macias seeks to do here, *i.e.*, force Jimarez, at Defendant's trial, to adopt his unsworn, out-of-court admissions. We, therefore, have little difficulty in concluding Jimarez properly invoked the Fifth Amendment privilege.

IV.

Defendant Rivas-Macias also contends the district court erred in failing, sua sponte, to continue his trial until after Jimarez's sentencing. Because Defendant failed to request a continuance below, we review only for plain error. See United States v. Barrett, 496 F.3d 1079, 1090 (10th Cir. 2008). Under this standard, even if a defendant demonstrates an error that is plain, we may only take corrective action if that error not only prejudices the defendant's substantial rights, but also seriously affects the fairness, integrity, or public reputation of judicial proceedings. See United States v. Vigil, 523 F.3d 1258, 1264 (10th Cir. 2008). Here, we are unable

17

to discern any error, plain or otherwise.

District courts necessarily possess "broad discretion" in deciding whether to grant a party's request for a continuance. United States v. Flanders, 491 F.3d 1197, 1216 (10th Cir. 2007). Accordingly, we review the district court's determination in this regard for an abuse of discretion. See Rogers v. Andrus Transp. Servs., 502 F.3d 1147, 1151 (10th Cir. 2007). Our practice is thus to uphold the district court's ruling unless we conclude its decision was (1) "arbitrary or unreasonable" and (2) "materially prejudiced" the movant. Id.

Defendant cites no authority, and we have found none, suggesting a district court is required, *sua sponte*, to continue a defendant's trial until a witness invoking the Fifth Amendment privilege has been sentenced. Absent extraordinary circumstances, our adversarial system of justice imposes "an abiding duty" on each party to take the legal steps "necessary to protect his or her own interests."[15] Cotto v. United States, 993 F.2d 274, 278 (1st Cir. 1993); see also Ackermann v. United States, 340 U.S. 193, 197 (1950) (describing a defendant's "duty to take legal steps to protect his interest in litigation in which the United States was a party adverse to him"). No extraordinary circumstances exist, which justify relieving Defendant Rivas-Macias of that duty here. Because we cannot say, under these circumstances,

---

[15] Cf. United States v. Mitchell, 518 F.3d 740, 749 (10th Cir. 2008) ("Ours is an adversarial system of justice. The presumption, therefore, is to hold the parties responsible for raising their own defenses.").

18

that the district court's refusal to grant a continuance, sua sponte, was arbitrary or unreasonable, we reject Defendant's claim of error.

AFFIRMED.[16]

---

[16] In light of our decision in this case, we deny the parties' Stipulated Motion to Supplement the Record on Appeal as moot.