FILED
United States Court of Appeals
Tenth Circuit

April 11, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HIRAM MARCELENO,

    Defendant - Appellant.

No. 15-2074

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 2:13-CR-03760-MCA-1)**

---

Gregory M. Acton, Albuquerque, New Mexico, for Defendant-Appellant.

William J. Pflugrath, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **KELLY, BRISCOE** and **HARTZ**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

Hiram Marceleno pleaded guilty to one count of reentry of a removed alien, in violation of 8 U.S.C. § 1326(a) and (b).  In this direct appeal, Marceleno claims the district court erred by denying his request to withdraw his guilty plea

pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

Marceleno was born in Mexico and is not a United States citizen. After more than thirty years in the United States, he was deported to Mexico in 2013, only to reenter the United States shortly thereafter. As to the events that led to his reentry, Marceleno testified to the following facts at an evidentiary hearing on his motion to withdraw his guilty plea. When he arrived in Mexico following his deportation, he set out to complete the community service remaining as part of his supervised release for an unrelated prior misdemeanor offense. His probation officer confirmed that Marceleno indeed contacted her to arrange continued supervision in order to complete this service. While in Juarez, a man approached Marceleno with what Marceleno understood as an offer to help him complete his community service in exchange for payment. Marceleno testified that he accompanied this unidentified man to a house in the mountains near Juarez, in which several other individuals were staying. Instead of completing his community service, Marceleno found himself involved with a group of human traffickers.[1] He testified that he was compelled to work as a decoy in border-

---

[1] The briefs and the record also refer to these individuals interchangeably as "coyotes," "guides," "guerrillos," or as members of an "alien smuggling organization" or ASO.

2

crossing operations, carrying a ladder to the border fence, and "touch[ing] . . . the fence with the ladder" in an effort to distract Border Patrol agents. II ROA at 120.

Marceleno testified that after several days of this decoy work, three of the smugglers escorted him and two other individuals on a nighttime trek that, Marceleno now understands, led him across an open portion of the border into the United States. About a quarter of the way into the journey, he told his escorts that he could not continue because of his poor health. One of the smugglers then threatened to stab him if he did not continue, and that he would be found "somewhere out there." Id. at 124–30, 168–71. Marceleno admits that this threat was not repeated and that he did not see any weapons, or witness similar violence against other individuals during his time with the smugglers. Marceleno nonetheless took the threat seriously and pressed on. He eventually collapsed near an industrial facility about 200 yards inside the United States, although he claims he did not know he was in the United States at the time. He testified that at least one of the smugglers accompanied him into United States territory, and was with him until shortly before he collapsed. Marceleno testified that, as a result, he was found in the United States without any intention of being there, and that he reentered the United States under duress.

The government's evidence tells a different story. At the same hearing on Marceleno's motion to withdraw his guilty plea, the government presented

3

testimony that although alien smuggling organizations do use decoys to distract agents at the border fence, they are typically pre-teens and teenagers. Additionally, Border Patrol Agent Antonio Molina, who discovered the collapsed Marceleno, testified that, although Molina could not specifically remember the events from that day, his incident report indicates that there was only a single set of footprints leading north from the border to where Marceleno was found. It is undisputed that when Agent Molina found Marceleno and questioned him regarding his destination, he replied "Fort Worth, Texas." Id. at 146–47. Marceleno contends that, because of exhaustion and confusion, he thought Agent Molina was asking where he was from, not where he was headed. After being taken to a Border Patrol station, Marceleno was again interviewed, this time by Agent Kevin McIlwee. Marceleno again stated he was headed to Fort Worth, but contends now that he was still confused about the question. Marceleno does not dispute that he did not tell either Agent Molina or Agent McIlwee that he crossed the border under duress. When the agents asked if Marceleno feared returning to Mexico, he said he did not.

Marceleno initially pleaded not guilty to the charge of reentry of a removed alien, but changed his plea after consultation with counsel. According to Marceleno's counsel, Marceleno stated "that he had been forced" to reenter the United States. Aplt. Br. at 13. In response, counsel advised Marceleno that duress "is almost never a viable defense because there is almost always someplace

4

else to go other than the United States," and counsel did not seek further details on the circumstances of Marceleno's reentry. Id. During his guilty plea colloquy, Marceleno confirmed that he understood the charge against him and the trial rights he was waiving, that he had a full opportunity to consult with his attorney and was satisfied with his legal representation, and that no one was forcing him to plead guilty. Marceleno heard the government represent that it could prove that he is an alien who was removed from the United States, and that he was found in New Mexico without permission from the United States to reenter. The district court found Marceleno competent and capable of entering a guilty plea, and that his plea was knowing, voluntary, and supported by an independent basis in fact. Consequently, the district court accepted his guilty plea.

Marceleno's counsel now asserts that he made a "critical mistake" by failing to inquire further into Marceleno's statement that he was forced to reenter the United States. Aplt. Br. at 13. Counsel states that he only learned the facts which Marceleno related at the hearing when preparing Marceleno's sentencing memorandum. It was only after this more detailed discussion, approximately four months after the district court accepted Marceleno's guilty plea, that Marceleno filed a motion to withdraw his plea. Marceleno asserted two grounds for withdrawal: (1) legal innocence, claiming he lacked the intent to reenter the United States and that he was under duress, and (2) his mistaken understanding of the strength of his defenses rendered his guilty plea unknowing.

5

After two days of evidentiary testimony, the motion was denied. The district court made extensive "findings of fact," including that it did not find Marceleno's testimony regarding his reentry credible. I ROA at 37–41. The court specifically noted that Marceleno's testimony was "vague, inconsistent, and evasive." Id. at 37. In contrast, the court found the Border Patrol agents' testimony credible. Systematically rejecting each of Marceleno's factual contentions regarding his innocence, the court found that Marceleno "intentionally crossed the border between Mexico and the United States of his own free will." Id. at 41. Marceleno's subsequent motion for reconsideration was also denied, and he was sentenced to thirty months' imprisonment. This timely appeal followed.

## II

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The defendant "bears the burden of establishing a fair and just reason." United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007). District courts consider seven factors when deciding whether a defendant has met this burden: "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7)

waste of judicial resources." Id. (quoting United States v. Gordon, 4 F.3d 1567, 1572 (10th Cir. 1993)). If the assertion-of-innocence, knowing-and-voluntary, and ineffective-assistance-of-counsel factors all weigh against the defendant, a district court need not consider the remaining four factors. United States v. Byrum, 567 F.3d 1255, 1265 (10th Cir. 2009).

On appeal, we review the district court's application of the Gordon factors for abuse of discretion, with the exception of two factors which we review de novo: whether the plea was knowing and voluntary and, if reviewable on direct appeal, whether counsel provided effective assistance. Id. at 1213, 1215. Although a motion to withdraw a guilty plea should be "freely allowed," we will not reverse a district court's denial of such a motion unless it acted "unjustly or unfairly." United States v. Garcia, 577 F.3d 1271, 1274 (10th Cir. 2009).

The district court styled its conclusions regarding Marceleno's assertion of innocence as "findings of fact," see I ROA at 36, which we typically review only for clear error. See United States v. Soto, 660 F.3d 1264, 1268 (10th Cir. 2011). However, we have been careful to avoid singling out individual Gordon factors for more deferential review. See Hamilton, 510 F.3d at 1215; Garcia, 577 F.3d at 1274. To review the district court's overall conclusion on the credibility of Marceleno's assertion of innocence only for clear error would deviate from our previous treatment of motions to withdraw a guilty plea. We therefore review the

7

assertion-of-innocence factor for abuse of discretion.[2]

## III

On appeal, Marceleno renews his arguments that he credibly asserted his innocence and that his plea was not knowing.  He does not assert the ineffective-assistance-of-counsel factor.  For the reasons outlined below, we reject Marceleno's arguments and conclude the district court did not abuse its discretion in denying his motion.

*Assertion of Innocence*

A defendant's assertion of innocence must be "credible."  Hamilton, 510 F.3d at 1214.  A defendant "must support the assertion of innocence with a credible argument," meaning he "must make a factual argument that supports a legally cognizable defense."  Hamilton, 510 F.3d at 1214, 1215 n.2.  After announcing this standard in Hamilton, we did not address the credibility of Hamilton's assertion of innocence because, even taking his asserted facts as true, his theory of defense was not legally cognizable.  Id. at 1215.  Since Hamilton,

---

[2] In Soto, we applied clear error review to a district court's finding that a defendant intentionally lied to the court about facts underlying his claim that his plea was not knowing and voluntary.  660 F.3d at 1268.  Similarly, in United States v. Sanchez-Leon, 764 F.3d 1248, 1259 (10th Cir. 2014), we applied clear error to a district court's factual finding that the defendant "ha[d] not asserted any innocence."  Neither of these cases raised the issue of whether a defendant's assertion of innocence met the Hamilton credibility standard, and so do not require that we review that question under clear error here.

8

we have declined to further define this credible-argument standard and instead have accepted alleged facts, <u>arguendo</u>, and then have ruled that those facts do not constitute a legally cognizable defense. <u>Garcia</u>, 577 F.3d at 1274.

Marceleno argues that his version of events, if accepted as credible, establishes two legal defenses: that he lacked the requisite intent, and that he reentered the country under duress. Section 1326 requires only that Marceleno acted "with the intent to do the act of entering the country." <u>United States v. Sierra-Ledesma</u>, 645 F.3d 1213, 1219 (10th Cir. 2011) (quoting <u>United States v. Hernandez-Hernandez</u>, 519 F.3d 1236, 1241 (10th Cir. 2008)). A "natural, common sense inference" that one found in the United States intended to be there can satisfy the intent requirement. <u>Id.</u> But Marceleno can rebut that inference with evidence that "demonstrate[s] that one of the speculative possibilities of involuntary entry ha[s] actually taken place." <u>Id.</u> (quoting <u>Hernandez-Hernandez</u>, 519 F.3d at 1241). Marceleno argues his reentry was involuntary because he was under duress. "A duress defense requires: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm." <u>United States v. Portillo-Vega</u>, 478 F.3d 1194, 1197–98 (10th Cir. 2007). If the evidence is insufficient on any one of these elements, the defense fails. <u>Id.</u> at 1198, 1201 (denying a defendant a jury instruction on duress at trial because the "jury need not be burdened with testimony" regarding the defense if "elements and testimony

9

supporting one element is insufficient to sustain it even if believed" (quoting United States v. Bailey, 444 U.S. 394, 416 (1980))).

Marceleno testified in support of his contention that he entered the United States involuntarily and under duress. Although Marceleno's testimony presents a close case, his duress defense could be a legally cognizable defense if we accept his testimony as true.[3] First, the smuggler's purported threat of stabbing was not directed at sometime in the future, but rather was immediate. Second, although the threat was only conveyed once and was not supported by a visible weapon or evidence of prior violence, the interaction was in an isolated environment, and came from an individual engaged in illegal human trafficking. This threat, as described by Marceleno, could sustain a well-grounded fear. Finally, unlike prior cases in which defendants admitted facts either establishing "ample time and opportunity to contact law enforcement for help" in advance of the illegal acts, or evidence of reasonable, legal alternatives, we see no reasonable opportunity for Marceleno to escape the threatened harm here. Cf., United States v. Cornelius, 696 F.3d 1307, 1323–24 (10th Cir. 2012); United States v. Beckstrom, 647 F.3d 1012, 1016–17 (10th Cir. 2011); United States v. Al-Rekabi, 454 F.3d 1113, 1121–22 (10th Cir. 2006); United States v. Glass, 128 F.3d 1398, 1409 (10th Cir. 1997); United States v. Scott, 901 F.2d 871, 873 (10th Cir. 1990). Even though

---

[3] The district court never reached the question of legal cognizability, disposing of Marceleno's defenses as not credible.

the threat was conveyed about one quarter of the way into an approximately four- or five-hour journey, Marceleno testified that the threatening individual accompanied him into United States territory, leaving him only when he was on the brink of physical collapse. He contends his physical infirmity then prevented him from taking any action to avoid his illegal presence in the United States once the threat dissipated. Moreover, the government has not suggested any intervening opportunity to escape or other courses of action potentially available to Marceleno. Instead of arguing the legal insufficiency of Marceleno's proffered facts, the government's argument merely reverts to an attack on Marceleno's credibility.

Thus, we must decide whether the district court abused its discretion by concluding Marceleno's testimony was not sufficiently "credible" to weigh the assertion-of-innocence factor in his favor. Marceleno argues that the district court was required to accept his facts as true, applying a standard akin to a motion to dismiss, or alternatively, a motion for summary judgment. Marceleno points to the following language from Hamilton: "If the movant's factual contentions, when accepted as true, make out no legally cognizable defense to the charges, he has not effectively denied his culpability." 510 F.3d at 1214–15 (quoting United States v. Barker, 514 F.2d 208, 220 (D.C. Cir. 1975)). This statement merely establishes that defenses must be legally cognizable in addition to credible; it does not compel a district court to treat a defendant's factual assertions with any

11

deference.  Indeed, in <u>Garcia</u>, we indicated in dicta that we would require some concrete evidence in order to find an assertion of innocence credible.  577 F.3d at 1274.  The defendant in <u>Garcia</u> claimed that a new witness had come forward who would testify to facts establishing his innocence.  <u>Id.</u>  We noted that the defendant "did not provide the district court with a sworn statement or a specific description of the newly-discovered witness' potential testimony," and that a defendant is "not entitled to withdraw his plea simply because he possesses a non-frivolous defense theory."  <u>Id.</u>

We therefore disagree with Marceleno's contention that his assertions must be accepted as true.  A district court need not accept a defendant's version of the facts as true for purposes of evaluating whether a defendant's assertion of innocence is credible.  To hold otherwise would undermine Rule 11 by removing the discretion granted to district courts on motions to withdraw a guilty plea.  "Given the great care with which pleas are taken under . . . Rule 11, there is no reason to view pleas . . . as merely 'tentative'" before a sentence is imposed.  <u>United States v. Hyde</u>, 520 U.S. 670, 676 (1997) (quoting Fed. R. Crim. P. 32(d) advisory committee's note).  "Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim."  <u>Id.</u> at 677 (internal quotation omitted).

12

On the other hand, the district court need not be convinced that a defendant is innocent in order to grant a motion to withdraw a guilty plea. Our consistent requirement for only an "assertion" of innocence that is merely "credible" makes that clear. As a result, the government's reference to the preponderance of the evidence standard applicable to affirmative defenses at trial is inapposite. The government's argument that credibility is a "threshold issue" of fact which district courts must decide before analyzing the Gordon factors is also unpersuasive. The government's approach would change the structure of the seven Gordon factors and, like Marceleno's argument, would unnecessarily restrain a district court's discretion to apply and weigh those factors. See Aplee. Br. at 13–15.

The standard therefore lies between the two extremes proposed by the parties. The Fourth Circuit has provided helpful clarification. Relying on Hamilton and the same multi-factor test applied by this court, the Fourth Circuit explained that a credible assertion of innocence "has the quality or power of inspiring belief," and "tends to either defeat the elements in the government's prima facie case or make out a successful affirmative defense." United States v. Thompson-Riviere, 561 F.3d 345, 353 (4th Cir. 2009). A defendant is "not required to provide conclusive proof" of his innocence. Id. This standard is appropriate because it does not unduly constrain a district court's discretion by forcing it to accept facts as true, nor does it ask a district court to act as a fact-

13

finder on innocence. As always, if a district court concludes that the assertion-of-innocence factor weighs in favor of a defendant, it still must weigh this factor with the presence or absence of the remaining Gordon factors.

Marceleno argues that his testimony demonstrates "indicia of veracity," and is therefore credible. Aplt. Br. at 21. Marceleno's testimony, standing alone, offered a fairly detailed account of his reentry. Some of Marceleno's testimony from the hearing was also corroborated by other evidence, including the fact that he contacted his probation officer from Mexico, that smugglers sometimes use decoys (although not usually in his age group), and that he is in poor health.

However, these corroborated facts are collateral to whether he was forced by human traffickers to cross the border under physical threat. And Marceleno's testimony was riddled with internal problems. He admitted that he has trouble with his memory, that he never mentioned to Border Patrol agents any of the facts relevant to either his lack of intent to reenter or duress, and that he twice told agents he was headed to Fort Worth, Texas. Further, Marceleno's narrative of duress was late in coming and did not surface until four months after the district court accepted his guilty plea.

On this record, we cannot say that weighing the assertion-of-innocence factor against Marceleno was an abuse of discretion, or was "unjust or unfair." Even under the standard clarified today, the quality and power of Marceleno's factual argument to inspire belief is not strong enough to warrant reversal.

14

*Knowing and Voluntary Plea*

"To enter a plea that is knowing and voluntary, the defendant must have 'a full understanding of what the plea connotes and of its consequence.'" United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002) (quoting Boykin v. Alabama, 395 U.S. 238, 244 (1969)). Marceleno does not argue that he did not understand the meaning or consequences of pleading guilty, but rather that he was mistaken regarding the strength of his defenses. In support, he cites United States v. Pressley, 602 F.2d 709 (5th Cir. 1979), which stated generally that when a "plea was entered by a defendant who acted as a result of mistake, it is an abuse of discretion not to permit the plea to be withdrawn." 602 F.3d at 711. However, the appellant in Pressley, "a man of questionable competence," claimed that he was mistaken as to the essential terms of the plea agreement, including the maximum sentence for his offense. 602 F.2d at 710–11. Here, there is no question as to Marceleno's competence or whether he understood "what the plea connotes" or "its consequence," including the potential sentence. Marceleno therefore offers no authority to support his argument that a mistake as to the strength of one's defenses renders a plea unknowing. We conclude that the district court did not err in weighing this factor against Marceleno in denying his motion to withdraw his plea.

15

**IV**

The district court's denial of Marceleno's motion to withdraw his guilty plea is AFFIRMED.

No. 15-2074, *United States v. Marceleno*

**HARTZ**, Circuit Judge, dissenting:

The excellent majority opinion properly presents and carefully analyzes the issues raised on this appeal. But I must respectfully dissent because I would weigh some of the factors differently in this close case.

In my view, the district court was required to grant Defendant's motion to withdraw his plea. To begin with, the motion preceded sentencing; and under our precedent, "motions to withdraw guilty pleas before sentencing are to be freely allowed, viewed with favor, treated with liberality, and given a great deal of latitude." *United States v. Carr*, 80 F.3d 413, 419 (10th Cir. 1996). Of course, a solemn plea of guilty is entitled to great weight. But there are important countervailing factors here. One is that Defendant had a good excuse, corroborated by his counsel, for changing his mind about pleading guilty. He was originally told by counsel that duress would not be a defense to the charge, and he sought to change his plea only after counsel corrected the original erroneous advice. What is more, nothing Defendant said when he pleaded guilty contradicts his present position. These two factors in themselves distinguish Defendant's motion to withdraw from the mine run of such motions. Further, the burden on the prosecution and the court from allowing withdrawal of the plea would appear to be about as light as that burden could ever be.

In these circumstances I would think that the only reason to deny withdrawal would be to avoid a waste of time because conviction is a forgone conclusion. It is apparently on this point where the majority and I part ways. Although we agree that

Defendant's version of events, if believed, would constitute a defense to the charge, the majority views the plausibility of that version as being so slight as to justify denial of the motion to withdraw. I disagree. I personally am dubious of his account, but I doubt that I would be selected to serve on the jury in the case. From what I can tell from the cold record, I believe that a reasonable juror hearing Defendant's testimony could have a reasonable doubt about his guilt. Therefore, Defendant should be permitted to go to trial if he so desires.