**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SOPHIA MONIQUE ZAYAS,

    Defendant - Appellant.

No. 18-2154
(D.C. No. 2:12-CR-00944-RB-2)
(D. New Mexico)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **SEYMOUR**, and **McHUGH**, Circuit Judges.
_____

On February 24, 2014, Sophia Zayas pleaded guilty, through the Assimilated

Crimes Act, to the New Mexico crime of child abuse resulting in great bodily harm.

At the time of her guilty plea, the requisite mens rea under New Mexico law for child

abuse resulting in great bodily harm was criminal negligence, a standard satisfied

upon a showing that the defendant disregarded a risk of which she knew or should

have known. On August 21, 2014, the New Mexico Supreme Court overruled its

precedent and held the mens rea required to convict for child abuse resulting in great

bodily harm is recklessness—the defendant consciously disregarded a substantial and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

unjustifiable risk. Ms. Zayas is entitled to the benefit of this change in the law because it occurred before the district court entered judgment on September 28, 2018. *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (1974) (stating "the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary").

Ms. Zayas moved to withdraw her guilty plea on the basis that it was not knowing and voluntary because the district court had failed to explain adequately the mens rea requirement. The district court denied Ms. Zayas's motion, determining the Information adequately informed Ms. Zayas of the recklessness requirement and that Ms. Zayas had admitted facts consistent with that requirement in her plea agreement.

Because nothing in the record informed Ms. Zayas that the government would be required to prove that she knew, rather than merely should have known, of the risk, we conclude her plea was not knowing and voluntary and reverse the district court's denial of Ms. Zayas's motion to withdraw.[1]

---

[1] Ms. Zayas's briefing appears to challenge the acceptance of her guilty plea, not the denial of her motion to withdraw the plea. At oral argument, Ms. Zayas's counsel clarified that Ms. Zayas is challenging the district court's denial of her motion to withdraw the plea. The government is not prejudiced by this clarification because the government interpreted Ms. Zayas's briefing as a challenge to the denial of her motion to withdraw the plea.

## I. BACKGROUND

### A. *Factual History*

During the relevant time period, Ms. Zayas was a member of the Air Force living on Holloman Air Force base. On October 22, 2007, Ms. Zayas found her two-month-old daughter, Annalicia Zayas, unresponsive thirty minutes after putting Annalicia down for a nap. An autopsy showed Annalicia had suffered multiple skull fractures, hemorrhages, and scalp contusions within two to three hours of her death. The autopsy also revealed Annalicia had ten rib fractures in various stages of healing; healing fractures to her right wrist bones; and lesions on her body, consistent with cigarette burns, some of which were healing. The medical examiner ruled Annalicia's death a homicide.

On April 24, 2012, a grand jury indicted Ms. Zayas, charging her with various violations of New Mexico law under the Assimilated Crimes Act, 18 U.S.C. §§ 7, 13.[2] Ms. Zayas was arrested that same day. The United States filed multiple superseding indictments before Ms. Zayas agreed to plead guilty to an Information. The Information charged Ms. Zayas with the assimilated state crime of child abuse

---

[2] The Assimilated Crimes Act, 18 U.S.C. § 13, "performs a gap-filling function by 'borrowing state law' to bolster the 'federal criminal law that applies on federal enclaves.'" *United States v. Jones*, 921 F.3d 932, 935 (10th Cir. 2019) (quoting *Lewis v. United States*, 523 U.S. 155, 160 (1998)). It provides that anyone "guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed . . . within the jurisdiction of the State . . . in which [the federal enclave] is situated, . . . shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13(a). The Air Force base where Annalicia Zayas died is a federal enclave.

resulting in great bodily harm, a violation of 18 U.S.C. §§ 7, 13 and N.M. Stat. Ann.

§ 30-6-1(D)(1), (D)(2), and (E). Specifically, the Information alleged,

> From on or about August 16, 2007, through on or about October 22, 2007, . . . in the District of New Mexico, at Holloman Air Force Base, . . . the defendant, Sophia Monique Zayas, did negligently, and without justifiable cause, cause and permit Jane Doe #1 . . . to be placed in a situation that may endanger Jane Doe #1's life and health, and to be tortured and to be cruelly punished, which resulted in great bodily harm to Jane Doe #1.

ROA, Vol. I at 170.[3]

On February 24, 2014, pursuant to a plea agreement, Ms. Zayas pleaded guilty

to the Information. The plea agreement included the following admission of facts:

> On or about August 16, 2007 through October 22, 2007, I caused or permitted Annalicia Zayas, my daughter who was less than 12 years of age, to be placed in a situation which endangered her life or health or tortured, cruelly confined or cruelly punished her.
>
> I knew or should have known that my conduct created a substantial and foreseeable risk that my daughter, Annalicia Zayas, would be physically harmed or killed. I disregarded that risk, and I was wholly indifferent to the consequences of the conduct and to the welfare and safety of my daughter, Annalicia Zayas.
>
> My actions resulted in great bodily harm to Annalicia.
>
> Specifically, as a result of my actions, my daughter sustained the following injuries between August 16, 2007 through October 22, 2007, that constitute great bodily harm:

---

[3] The Information did not charge Ms. Zayas with abusing Annalicia, rather, it charged Ms. Zayas with failing to protect Annalicia. Ms. Zayas has maintained that her codefendant and husband, Peter Zayas, was responsible for inflicting the injuries that caused Annalicia's death. Although Mr. Zayas made inconsistent statements regarding who was responsible for Annalicia's death, on at least two occasions he claimed sole responsibility for Annalicia's injuries.

4

        (1)    Posterior transverse skull fractures;
        (2)    Rib fractures on at least two occasions; and
        (3)    Radius and Ulna fractures

    My actions and the above injuries all occurred in New Mexico, at
    Holloman Air Force Base.

ROA, Vol. I at 175–76.

    As part of the plea agreement, Ms. Zayas "agrees and represents that [her] plea

of guilty is freely and voluntarily made and is not the result of force, threats or

promises (other than the promises set forth in this plea agreement . . .)." ROA, Vol. I

at 177. Above Ms. Zayas's signature, the following paragraph appeared:

    This agreement has been read to me in the language I understand best,
    and I have carefully discussed every part of it with my attorney. I
    understand the terms of this agreement, and I voluntarily agree to those
    terms. My attorney has advised me of my rights, of possible
    defenses, . . . and of the consequences of entering into this
    agreement. . . . Finally, I am satisfied with the representation of my
    attorney in this matter.

ROA, Vol. I at 178.

    At the plea hearing, the district court began by referencing the Information and

confirming that Ms. Zayas understood she would be pleading guilty to the charges set

forth in that document. After reviewing the maximum penalties for the charge and

Ms. Zayas's waiver of indictment, the district court turned to the plea agreement.

Ms. Zayas acknowledged that she had read the plea agreement before she signed it,

had a chance to discuss the agreement with her attorneys, and understood its terms.

The district court also confirmed with Ms. Zayas that she understood the rights she

was giving up by entering a plea. Then, the district court had the government read the

5

factual basis from the plea agreement. Finally, the district court asked Ms. Zayas to tell the court "in [her] own words why you think you're guilty of what you've just pled to." ROA, Vol. I at 212. Ms. Zayas gave the following response:

> Because I should have known. I didn't know. I didn't know that Anna had rib fractures. I didn't know that Anna had wrist fractures. I didn't know that Anna had a skull fracture. But -- and even though I have that -- that -- that conviction in me and that's what has -- that along with my knowing that she was not murdered, has kept me fighting all of this [sic] years.
>
> But when the language says that I should have known . . . my language used -- I used to say how could I? If I had known, I would have . . . I would have helped my child, I would have seen. I would have -- if I had known . . . things could be different. But I didn't. But the language says that I should have known because I am her parent. She's alive. And that -- that -- the -- the gross -- the injuries and how they have -- could have occurred, even if accidental, was still negligent because it wasn't addressed. And so, although I never intended for Anna to be hurt, although I had another child afterwards and raised her with no injuries, I cannot deny that these injuries were, indeed, found.
>
> So -- so I hurt for her. I wish I could have known, but I . . . and I should have known, because I'm her mommy. And so that's how I've been able to -- the language is hard to stomach. It always -- it always was, but I should have known. And I feel bad about that. I feel horrible.

ROA, Vol. I at 212–13 (ellipses in original).

In November 2015, Ms. Zayas's counsel filed a motion to withdraw as counsel and a motion written by Ms. Zayas to withdraw her guilty plea. At a hearing on February 2, 2016, the district court granted counsel's motion to withdraw. The district court also determined Ms. Zayas's plea was knowingly and voluntarily made but withheld a final ruling on Ms. Zayas's motion to withdraw her plea until new counsel could review it. In October 2016, Ms. Zayas's new counsel filed a supplemental and an amended supplemental motion to withdraw Ms. Zayas's guilty

plea. As relevant to this appeal, Ms. Zayas argued she should be permitted to withdraw her plea because the district court failed to adequately explain the nature of the charge, including the recklessness mens rea requirement. Concluding that the Information adequately informed Ms. Zayas of the recklessness requirement and that the admission of facts in Ms. Zayas's plea agreement satisfied this requirement, the district court denied Ms. Zayas's motion to withdraw her guilty plea on February 8, 2017.

In December 2017, Ms. Zayas filed a motion to reconsider the denial of her motion to withdraw her guilty plea on unrelated grounds. At the hearing on the motion to reconsider, the district court *sua sponte* raised the concern that the court had not sufficiently explained the elements of the charge to Ms. Zayas during the plea colloquy. After receiving additional briefing on this matter, the district court concluded the language in the plea agreement put Ms. Zayas on notice that she was pleading guilty to a crime with a recklessness mens rea and denied Ms. Zayas's motion to reconsider. On September 28, 2018, the district court entered judgment, sentencing Ms. Zayas to 180 months' imprisonment. Ms. Zayas timely filed a notice of appeal.

### B.   The Mens Rea Requirement for Child Abuse Under New Mexico Law

Ms. Zayas pleaded guilty to child abuse resulting in great bodily harm in violation of 18 U.S.C. §§ 7, 13 and N.M. Stat. Ann. § 30-6-1(D)(1), (D)(2), and (E). Under New Mexico law, "[a]buse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a

child to be: (1) placed in a situation that may endanger the child's life or health; [or] (2) tortured, cruelly confined or cruelly punished." N.M. Stat. Ann. § 30-6-1(D)(1)-(2). "Negligently" in this context "refers to criminal negligence and means that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." *Id.* § 30-6-1(A)(3).

At the time Ms. Zayas entered her guilty plea, the New Mexico Supreme Court had interpreted the "knew or should have known" language in § 30-6-1 to "evince[] a legislative intent to use the concept of criminal negligence, not recklessness, as the standard for negligent child abuse." *State v. Schoonmaker*, 176 P.3d 1105, 1117 (N.M. 2008), *overruled by State v. Consaul*, 332 P.3d 850 (N.M. 2014). New Mexico's uniform jury instruction for child abuse included the same "knew or should have known" mens rea requirement:

> The defendant acted [intentionally] [or] [with reckless disregard] [and without justification]. [To find that _____ (*name of defendant*) acted with reckless disregard, you must find that _____ (*name of defendant*) knew or should have known the defendant's conduct created a substantial and foreseeable risk, the defendant disregarded that risk and the defendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of _____ (*name of child*)].

N.M. Uniform Jury Instruction 14–602 (repealed Apr. 3, 2015) (footnotes omitted).

Six months after Ms. Zayas entered her guilty plea, but before the court entered judgment on her plea, the New Mexico Supreme Court *sua sponte* expressed significant concerns about the child abuse jury instruction and the court's prior interpretation of the mens rea requirement for child abuse. *Consaul*, 332 P.3d at 855. In *State v. Consaul*, the New Mexico Supreme Court recognized that the New Mexico

8

"Legislature appeared to capture two standards of mens rea in one sentence when it defined 'negligently' as meaning 'that a person knew or should have known of the danger involved *and* acted with a reckless disregard for the safety or health of the child'" because "the statute refers to both ordinary negligence and criminal recklessness all in a single legislative breath." *Id.* at 858 (quoting N.M. Stat. Ann. § 30-6-1(A)(3)).

The New Mexico Supreme Court determined "[t]he Legislature cannot rationally have intended such self-contradiction," and concluded "the Legislature intended the term 'reckless disregard' to prevail when 'knew or should have known' conflicts." *Id.* The New Mexico Supreme Court reasoned, "The Legislature intended to punish acts done with a reckless state of mind consistent with its objective of punishing morally culpable acts and not mere inadvertence." *Id.* at 857. The court noted that recklessness typically "require[s] an actor to consciously disregard a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* at 857–58.

As a result, the New Mexico Supreme Court "expressly modif[ied] prior cases, including [its] own, in which courts have held that recklessness is not the culpability required for the crime of negligent child abuse." *Id.* at 858. To clarify that the requisite mens rea for child abuse is recklessness, the court relabeled "criminally negligent child abuse" to "'reckless child abuse' without any reference to negligence." *Id.* at 857. The court also "specifically overrule[d] that portion of

9

*Schoonmaker* in which [it] stated that 'Section 30-6-1 evinces a legislative intent to use the concept of criminal negligence, not recklessness, as the standard for negligent child abuse.'" *Id.* at 858 (quoting *Schoonmaker*, 176 P.3d at 1117).

Since *Consaul*, New Mexico has updated its uniform jury instruction for child abuse resulting in great bodily harm. The instruction no longer includes the statutory language "knew or should have known," and it now explains the recklessness mens rea requirement:

> _____ (*name of defendant*) showed a reckless disregard [without justification] for the safety or health of _____ (*name of child*). To find that _____ (*name of defendant*) showed a reckless disregard, you must find that _____ (*name of defendant*)'s conduct was more than merely negligent or careless. Rather, you must find that _____ (*name of defendant*) [caused] [or] [permitted] a substantial and unjustifiable risk of serious harm to the safety or health of _____ (*name of child*). A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than _____ (*name of defendant*) out of concern for the safety or health of _____ (*name of child*).

N.M. Uniform Jury Instruction 14–615 (footnotes omitted).

## II.   DISCUSSION

On appeal, Ms. Zayas asserts her guilty plea was not knowing and voluntary because the district court failed to explain adequately the nature of the charge, including the recklessness mens rea requirement.

### A.   *Standard of Review*

We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Marceleno*, 819 F.3d 1267, 1272 (10th Cir.

10

2016). As part of that analysis, we review de novo whether the plea was knowing and voluntary. *Id.* "Although a motion to withdraw a guilty plea should be freely allowed, we will not reverse a district court's denial of such a motion unless it acted unjustly or unfairly." *Id.* (internal quotation marks omitted).

## B. Analysis

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). To determine whether a defendant has met this burden, district courts consider seven factors: "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources." *Marceleno*, 819 F.3d at 1272 (quotation marks omitted). Although whether the plea is knowing and voluntary is only one of these factors, "[a] guilty plea is void if it is not knowing and voluntary." *United States v. Gigley*, 213 F.3d 509, 516 (10th Cir. 2000). Accordingly, if we conclude that Ms. Zayas's guilty plea was not knowing and voluntary, we may grant relief without separately considering the other *Marceleno* factors.

Federal Rule of Criminal Procedure 11 "is designed to assist the district judge in making the constitutionally required determination that a defendant's plea is truly voluntary." *United States v. Ferrel*, 603 F.3d 758, 762 (10th Cir. 2010) (quotation marks omitted). Under Federal Rule of Criminal Procedure 11(b), a district court

accepting a guilty plea must "inform the defendant of, and determine the defendant understands," certain information regarding the plea, including "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). "In most cases, this requires the court to recite the elements of the offense." *Ferrel*, 603 F.3d at 762.

The district court expressly acknowledged that it did not recite the elements of the offense as required under Rule 11(b)(1)(G). To establish that a defendant's guilty plea was not knowing and involuntary because the district court failed to recite the elements of the offense, the defendant must

> (1) show that the [intent] element was a critical element of [the charge]; (2) overcome the presumption that his attorney explained this element to him at some other time prior to his guilty plea; and (3) demonstrate that, prior to his guilty plea, he did not receive notice of this element from any other source.

*Allen v. Mullin*, 368 F.3d 1220, 1241 (10th Cir. 2004) (alterations in original) (quotation marks omitted). With respect to the second requirement, this court "will not indulge the presumption unless there is factual basis in the record to support it." *Id.*

The government concedes that the mens rea element is a critical element of the charged crime. Thus, to determine if Ms. Zayas's plea was knowing and voluntary, we analyze (1) the presumption that Ms. Zayas's attorney informed her of the recklessness mens rea requirement, and (2) the availability of information about the mens rea requirement from other sources.

12

### 1. The Presumption Ms. Zayas's Attorney Informed Ms. Zayas of the Mens Rea Requirement

The presumption that Ms. Zayas's attorney informed her of the recklessness mens rea requirement is appropriate only when "there is factual basis in the record to support it." *Allen*, 368 F.3d at 1241. The government argues there is a factual basis in the record to support the presumption because Ms. Zayas and her counsel acknowledged in the plea agreement and during the plea colloquy that they had reviewed her possible defenses. The government asserts that a conversation about Ms. Zayas's possible defenses "would have had to include a discussion of the mens rea to commit the crime." Gov't Br. at 17. Because the jury instructions at the time of Ms. Zayas's guilty plea included language about reckless disregard, the government argues the court can "presume[] that [Ms. Zayas's attorneys] informed [her] of the reckless-disregard requirement." *Id.* The government also points to the recklessness language in the plea agreement's factual basis and argues that Ms. Zayas's attorneys "would not have wanted her to make [a recklessness admission] if they had believed the government need only prove negligence." *Id.* We are not convinced.

At the time Ms. Zayas pleaded guilty, her attorneys had no notice that the government would be required to prove recklessness instead of criminal negligence. The New Mexico Supreme Court had reviewed the language of the child abuse jury instruction and concluded that "the concept of criminal negligence, not recklessness," provides "the standard for negligent child abuse." *Schoonmaker*, 176 P.3d at 1117. After Ms. Zayas entered her guilty plea, the New Mexico Supreme Court overruled

13

its precedent and held that the requisite mens rea for child abuse is recklessness. *Consaul*, 332 P.3d at 857–58. Because the mens rea requirement at the time Ms. Zayas entered her guilty plea was criminal negligence, there is no reason to presume from the record that her attorneys adequately informed her of the recklessness requirement that she consciously disregarded a known risk, rather than the negligence requirement that she should have known of the risk.

At most, Ms. Zayas's attorneys would have informed her of the criminal negligence standard and explained that the government must prove that she "knew or *should have known*" of a substantial foreseeable risk and disregarded that risk. N.M. Uniform Jury Instruction 14–602 (emphasis added). Her attorneys would have had no reason to object to the reckless disregard language in the plea agreement's factual basis because it mirrored the reckless disregard language in the child abuse jury instruction. And there is no evidence in the record that Ms. Zayas's attorneys would have had any reason to predict that the New Mexico Supreme Court would overrule its precedent on the mens rea requirement. Accordingly, there is no factual basis in the record to support a presumption that Ms. Zayas's attorneys adequately informed her of the recklessness mens rea requirement.

**2. Availability of Information Regarding the Mens Rea Requirement from Any Other Source**

To prevail, Ms. Zayas must also demonstrate that she did not learn of the recklessness mens rea element from another source. *Allen*, 368 F.3d at 1241. To determine whether a defendant had notice of the element prior to her plea, this court

14

considers the Information, plea agreement, and plea colloquy. *See, e.g.*, *Ferrel*, 603 F.3d at 763–64. We consider each of these items now, concluding that none of them notified Ms. Zayas of the recklessness mens rea element.

The Information does just the opposite, charging that Ms. Zayas "did *negligently*, and without justifiable cause, cause and permit Jane Doe #1, a child, to be placed in a situation that may endanger Jane Doe #1's life and health, and to be tortured and to be cruelly punished, which resulted in great bodily harm to Jane Doe #1." ROA, Vol. I at 170 (emphasis added). As the government conceded at oral argument, this language embodies a criminal negligence standard. There is no language in the Information that would have put Ms. Zayas on notice that the government would be required to prove recklessness—that she consciously disregarded a known risk.

Turning now to the plea agreement, we conclude it likewise fails to evidence Ms. Zayas's understanding that recklessness was required. Ms. Zayas admitted:

> I knew or should have known that my conduct created a substantial and foreseeable risk that my daughter, Annalicia Zayas, would be physically harmed or killed. I disregarded that risk, and I was wholly indifferent to the consequences of the conduct and to the welfare and safety of my daughter, Annalicia Zayas.

ROA Vol. I at 175–76.

The government emphasizes the second sentence—that Ms. Zayas disregarded "that risk" and was "wholly indifferent to the consequences of the conduct." According to the government, this "is the same language discussed and endorsed by the New Mexico Supreme Court in *Consaul* to define 'reckless disregard.'" Gov't Br.

15

at 18. The government further argues that the negligence language in the first sentence—that she knew or should have known—"was at most surplusage that did not negate the presence of the recklessness language." *Id.* In other words, the government contends that Ms. Zayas agreed she acted both negligently and recklessly. In denying Ms. Zayas's motion to reconsider, the district court agreed with this reading of the plea agreement:

> While it is true that the Plea Agreement also contains the confusing "knew or should have known" language that the New Mexico Supreme Court has disavowed, it was supplemental to the remaining language in the Plea Agreement, which clearly indicates a recklessness *mens rea* and was sufficient to put Ms. Zayas on notice that she was also pleading guilty to acting recklessly.

ROA, Vol. I at 443 (citation omitted); *see also* ROA, Vol. I at 315 (denying Ms. Zayas's motion to withdraw her guilty plea and determining "[t]he factual basis to which Ms. Zayas admitted included the recklessness element of the offense").

Again, we disagree. The language in the plea agreement's factual basis mirrored the language in the pre-*Consaul* jury instruction. In *Consaul*, the New Mexico Supreme Court expressly rejected that language as inadequately and confusingly defining "reckless disregard." *See Consaul*, 332 P.3d at 856–58. The court clarified that recklessness, not negligence, was the proper mens rea for child abuse, and that recklessness typically "require[s] an actor to consciously disregard a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* at 857–58.

16

Like the jury instruction struck down by the New Mexico Supreme Court, the plea agreement indicates that Ms. Zayas "*knew or should have known* that [her] conduct created a substantial and foreseeable risk that [Annalicia] would be physically harmed or killed." ROA, Vol. I at 175. As part of the plea agreement, Ms. Zayas admits she "disregarded that risk [and] was wholly indifferent to the consequences of the conduct," but she does so only for a risk of which she "knew or should have known." ROA, Vol. I at 175. Ms. Zayas does not admit in the plea agreement that she consciously disregarded such a risk. *See* ROA, Vol. I at 175. And the conflicting "knew or should have known" language does not notify Ms. Zayas that the government was required to prove she consciously disregarded a risk— something she could have done only if she knew of the risk—rather than prove Ms. Zayas disregarded a risk of which she should have known.

And nothing in Ms. Zayas's plea colloquy indicates she received notice of the recklessness mens rea requirement from any other source. To the contrary, she states repeatedly that she should have known of the risk and emphasizes that she did not know of that risk:

> Because I *should have known*. *I didn't know*. I didn't know that Anna had rib fractures. I didn't know that Anna had wrist fractures. I didn't know that Anna had a skull fracture. . . .
> But *when the language says that I should have known . . .* my language used -- I used to say how could I? If I had known, I would have . . . I would have helped my child, I would have seen. I would have -- if I had known . . . things could be different. But I didn't. *But the language says that I should have known* because I am her parent. She's alive. And that -- that -- the -- the gross -- the injuries and how they have -- could have occurred, even if accidental, *was still negligent* because it wasn't addressed. . . .

17

So -- so I hurt for her. I wish I could have known, but I . . . and *I should have known*, because I'm her mommy. And so that's how I've been able to -- the language is hard to stomach. It always -- it always was, *but I should have known*. And I feel bad about that. I feel horrible.

ROA, Vol. I at 212–13 (emphases added).

There is nothing in the Information or the plea agreement indicating the government would be required to prove that Ms. Zayas knew rather than should have known of the risk. In fact, at the time of Ms. Zayas's guilty plea, the government would not have been required to prove more than criminal negligence. The use of "should have known" in Ms. Zayas's plea agreement and the plea colloquy was not superfluous to the other reckless disregard language; it was an alternative basis for guilt. The should-have-known language in the plea agreement allowed the government to prove negligence when the defendant disregarded a risk of which she should have known. Later developments in New Mexico law make it clear that the should-have-known standard is no longer good law. And Ms. Zayas's plea colloquy emphatically confirms that she believed the government could prove its case because she should have known of the risk.

In sum, the record reflects that Ms. Zayas was not aware of the specific requirements of the recklessness element—that she consciously disregarded a known risk. There is nothing in the Information, plea agreement, or plea colloquy that would support the conclusion that Ms. Zayas received notice of the recklessness mens rea requirement from another source. Indeed, the Information that sets forth the criminal charge to which she pleaded guilty states only a negligence mens rea. Upon this

18

record, we conclude Ms. Zayas's guilty plea was not knowing and voluntary because she was not informed of the elements of the offense to which she pleaded guilty.

### III.    CONCLUSION

Because there is no factual basis in the record to support the presumption that Ms. Zayas's attorneys explained the recklessness mens rea requirement to her, and there is no evidence in the record that she received notice of the recklessness mens rea requirement from any other source, Ms. Zayas's plea was not knowing and voluntary. Therefore, the district court abused its discretion in denying Ms. Zayas's motion to withdraw her guilty plea. We **VACATE** the judgment, **REVERSE** the district court's denial of Ms. Zayas's motion to withdraw her guilty plea, and **REMAND** for further proceedings consistent with this decision.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

19