**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 29, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GONZALO BUSTILLOS-PEREA,

    Defendant - Appellant.

Nos. 25-2077 & 25-2078
(D.C. Nos. 2:23-CR-00979-KG-1 &
2:24-CR-00946-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.
_____

These appeals have been partially consolidated for procedural purposes. In the

case underlying No. 25-2078, a jury found Gonzalo Bustillos-Perea guilty of one

count of unlawful reentry of a removed alien, in violation of 8 U.S.C. § 1326(a), (b).

In the case underlying No. 25-2077, Bustillos-Perea pleaded guilty to violating the

terms of supervised release (based on the unlawful reentry in the other case) that

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

were imposed as part of a sentence for a prior conviction of unlawful reentry. Bustillos-Perea appeals, arguing the district court erred when it ruled he could not present a duress defense at trial in the unlawful-reentry case. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Bustillos-Perea is a Mexican citizen. From 1997 to 2023, he unlawfully entered the United States multiple times and was convicted of unlawful reentry four times. After serving an eight-month sentence on the most recent of those convictions, Bustillos-Perea was released from custody on March 29, 2024, and was removed to Mexico the same day. Less than a month later, on April 20, 2024, Border Patrol agents found him in New Mexico and apprehended him. He was again charged with unlawful reentry of a removed alien.

Prior to trial on that charge, Bustillos-Perea filed a notice of intent to present a duress defense, asserting his father had been murdered by a gang in Mexico, and he was forced to return to the United States after the gang "made numerous telephone threats to kill" him for reporting the murder to the local police. R. vol. I at 15.[1] For its part, the government filed a motion *in limine* seeking to exclude, among other things, any evidence involving the reason Bustillos-Perea reentered the United States, because unlawful reentry is a general-intent crime. Bustillos-Perea opposed the motion but did not file a response to it. The district court granted the motion.

---

[1] All record citations are to the record in No. 25-2078.

Bustillos-Perea then filed a motion to reconsider in which he asked the court to allow him to present a duress defense to the jury. The district court heard argument on the motion, where Bustillos-Perea proffered the following evidence. In 2022, a gang kidnapped and murdered his father, who owned a small store, for not paying protection. After Bustillos-Perea reported this to the Mexican police, the gang "started calling him," threatening to kill him. R. vol. III at 17. Bustillos-Perea fled to the United States because it was not hard for the gang to track him down in Mexico, especially in the smaller villages. He was removed to Mexico but soon returned. He did not have a reasonable opportunity to surrender because the gangs watch the border stations, and if he did surrender, he would have been immediately removed to Mexico again.

The government argued that the threats Bustillos-Perea received were general in nature, he could have sought asylum in the United States or another country, he could have relocated in Mexico, and he did not immediately surrender but instead was found 11 miles from the border and 40 miles from the nearest port of entry.

The district court disallowed the duress defense, concluding that Bustillos-Perea had not provided sufficient evidence on any of the elements of a duress defense to warrant placing the defense before the jury.

On the day of trial, Bustillos-Perea renewed his motion to reconsider based on supplemental evidence his attorney had just obtained from Bustillos-Perea's wife, who is a United States citizen, about events on the day Bustillos-Perea last entered the United States. The couple was traveling on a bus to Ciudad Juárez, intending to

enter the United States at a legal port of entry, when they noticed a van following the bus. They believed the van contained members of the gang that had threatened Bustillos-Perea. So, when the couple arrived in Juárez, they split up; he hid in a gas station bathroom, and she continued on to the United States. He then crossed the border and wandered in the New Mexican desert until Border Patrol apprehended him. He still receives "random phone calls" threatening "to get him" when he returns to Mexico. R. vol. III at 71 (internal quotation marks omitted).

The district court ruled that Bustillos-Perea had not shown the threat was sufficiently immediate, finding instead that it appeared "generalized and somewhat speculative as to what the individuals in the other vehicle may have been doing, [and] what their specific intentions were surrounding [the couple's] trip from Chihuahua to Ciudad Juárez." R. vol. III at 76. The court also concluded Bustillos-Perea failed to establish that he did not have any "reasonable alternatives" to unlawfully reentering. *Id.* The court therefore adhered to its prior ruling and disallowed the duress defense.

The case went to trial, where Bustillos-Perea presented no witnesses. The jury found him guilty. For that conviction, the district court sentenced him to 18 months in prison. And based on that conviction, the district court revoked Bustillos-Perea's supervised release in the case underlying No. 25-2077 and sentenced him to eight months in prison, with six months running consecutively to the 18-month sentence. These appeals followed, in which Bustillos-Perea advances arguments regarding only the district court's refusal to allow him to present a duress defense.

## II. Discussion

### A.    Standard of review

In reviewing whether a defendant's pretrial evidentiary proffer was sufficient to establish the affirmative defense of duress, "we respect the trial judge's role as gatekeeper and review the denial of a duress defense for abuse of discretion." *United States v. Dixon*, 901 F.3d 1170, 1176 (10th Cir. 2018) (internal quotation marks omitted). This standard involves determining whether the district court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (internal quotation marks omitted). "[W[hether there is sufficient evidence to constitute a triable issue of the defense is a question of law." *Id.* (alterations and internal quotation marks omitted). Consequently, "erroneous conclusions of law are *effectively* subject to de novo review." *Id.* at 1176, n.2.

### B.    Duress defense

To be "entitled to have the [district] court present a duress defense to the jury," a defendant must "produce[] sufficient evidence that would permit the jury to find in [his] favor by a preponderance on each element of the defense."[2] *Id.* at 1177. "In determining whether the evidence was sufficient to raise a jury issue, we review the evidence in the light most favorable to the defendant." *Dixon*, 901 F.3d at 1178.

---

[2] To the extent Bustillos-Perea argues that he only had to proffer "some evidence" supporting the defense, Aplt. Reply Br. at 2 (quoting *United States v. Beckstrom*, 647 F.3d 1012, 1016 (10th Cir. 2011)), we reject it. *See Dixon*, 901 F.3d at 1177 n.4 (rejecting same argument).

"A duress defense requires the establishment of three elements:  (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm."  *United States v. Portillo-Vega*, 478 F.3d 1194, 1197 (10th Cir. 2007) (internal quotation marks omitted).  Because illegal reentry after removal is a continuing offense, a defendant must also "proffer evidence of a bona fide effort to surrender as soon as the claimed duress had lost its coercive force."  *Id.* at 1201 (alterations and internal quotation marks omitted).

We conclude the district court did not abuse its discretion in finding Bustillos-Perea did not proffer sufficient evidence with respect to the first element. Accordingly, we need not address the other elements.  *See United States v. Marceleno*, 819 F.3d 1267, 1273 (10th Cir. 2016) ("If the evidence is insufficient on any one of these elements, the defense fails.").

To constitute an immediate threat of death or serious bodily injury for purposes of the duress defense, a threatened harm generally must be "immediate"; in other words, it generally cannot be "directed at sometime in the future."  *Id.* at 1274; *see also United States v. Wattleton*, 296 F.3d 1184, 1196 n.20 (11th Cir. 2002) ("The requirement of immediacy of the threat is a rigorous one in which fear of future bodily harm to one's self or to others will not suffice." (emphasis and internal quotation marks omitted)).

Bustillos-Perea received death threats from the gang by telephone.  Those threats, which apparently began in 2022, more than a year before the unlawful reentry

at issue here, were not that the gang would harm him immediately but instead were directed at some future, unspecified time.  Bustillos-Perea contends the threats were immediate because gang members knew his whereabouts, as evidenced by the fact they followed his bus to Juárez.  We disagree.  Assuming the gang knew all along where to find him, there is no evidence that, before his bus trip to the border, any gang member took any action that might indicate the threat would be carried out immediately.  Taken alone, then, the telephone threats were not sufficiently immediate for a jury to find the first element of the duress defense was met.[3]

Bustillos-Perea's proffered evidence about the van that followed the bus he took to Juárez fails to bolster the immediacy of the threat.  The proffer was only that Bustillos-Perea and his wife "believe[d]" that someone in the van was "part of the group that was making the phone threats."  R. vol. III at 70.  We agree with the district court that this proffer was "somewhat speculative" regarding the intentions and actions of the van's occupants.  *Id.* at 76.  There is no indication that the van's occupants did anything more than follow the bus.  We therefore conclude that the proffer was insufficient to show by a preponderance of the evidence that the van's occupants posed an immediate threat of death or serious bodily injury justifying Bustillos-Perea's unlawful reentry into the United States.

---

[3] We do not mean to suggest that a death threat made by telephone can never be sufficiently immediate to satisfy the first element.  But in the circumstances of this case, the telephone threats do not rise to that level.

We are not persuaded otherwise by any of the four cases Bustillos-Perea relies on in support of his argument, because each of those cases turned on its specific facts and is therefore distinguishable. We explain why.

In *United States v. Marceleno*, a smuggler threatened to stab the defendant, who was compelled to work as a decoy in a border-crossing human-trafficking operation, if the defendant did not continue on the smugglers' journey from Mexico into the United States. 819 F.3d at 1270–71. We determined the immediacy element was met because, notwithstanding that the defendant never saw a weapon or witnessed similar violence against anyone else, the stabbing threat "was not directed at sometime in the future, but rather was immediate." *Id.* at 1274. In contrast here, no gang member threatened Bustillos-Perea in person; instead, the only threats were made over the phone.

In *United States v. Chi Tong Kuok*, 671 F.3d 931 (9th Cir. 2012), an agent of a Chinese intelligence agency threatened to harm the defendant's family if he tried to stop illegally providing items to the agent. *See generally id.* at 934–36. For the next several years, the agent presented the defendant with details of his wife's comings and goings, along with photos of him with his wife and child in public, which showed he was being tracked. *Id.* at 936. The agent also called the defendant's wife at home despite that the defendant never gave him the home telephone number, and the agent sent a gift after the birth of the defendant's son, although the defendant had never told the agent his wife was pregnant. *Id.* Further still, the agent told the defendant others were doing the same things the defendant was doing, "and if they refused, a

8

family member would be arrested and held in a 'black jail'—where the Chinese government sends people to take them off the grid." *Id.* (brackets and internal quotation marks omitted). On these facts, the Ninth Circuit concluded that the threat was immediate because the agent "clearly indicated that harm to [the defendant's] wife would be the *specific* and *direct* consequence of refusing to obey the government's commands." *Id.* at 948. In contrast here, the threatened harm was not conditioned on Bustillos-Perea's failure to comply with the gang's commands, but on an act already completed—reporting his father's murder to the local police. In other words, the threat in *Kuok* was immediate because it was made clear the threat would be carried out if the defendant failed to act. In this case, the threats were not based on any such contingency but instead were directed at some unspecified time in the future. Moreover, the agent in *Chi Tong Kuok* repeatedly demonstrated an ability to track the defendant and his family, adding credibility to the agent's threats.

In *United States v. Contento-Pachon*, 723 F.2d 691 (9th Cir. 1984), the defendant was a taxi driver in Colombia. *Id.* at 693. A passenger named Jorge propositioned him to "swallow cocaine-filled balloons and transport them to the United States." *Id.* When the defendant refused, "Jorge mentioned facts about [the defendant's] personal life, including private details which [the defendant] had never mentioned to Jorge," and twice threatened to kill the defendant's wife and young child if he did not cooperate. *Id.* After the defendant agreed and swallowed the balloons, Jorge told him "that he would be watched at all times during the trip, and that if he failed to follow Jorge's instruction he and his family would be killed." *Id.*

9

The Seventh Circuit concluded that the threats were "not vague threats of possible future harm," noting in particular that the defendant would be "watched by one of Jorge's accomplices at all times during the airplane trip." *Id.* at 694. Unlike the threats in *Contento-Pachon*, the threats here were not contingent on Bustillos-Perea's failure to act and were not supported with evidence that the gang members had the ability to carry out the threat.

Finally, in *United States v. Dingwall*, 6 F.4th 744 (7th Cir. 2021), the Seventh Circuit concluded "that immediate physical presence of the threat is not always essential to a duress defense and that expert evidence of battering and its effects may be permitted to support a duress defense because it may inform the jury how an objectively reasonable person under the defendant's circumstances might behave." *Id.* at 746. Given its singular focus on battered-woman syndrome, *Dingwall* is not persuasive that the threats here were sufficiently immediate even though there was no "immediate physical presence of the threat," *id.*

## C.    District court's statements regarding general-intent offense

Bustillos-Perea argues that in refusing to allow him to present a duress defense, the district court erred by relying on the fact that unlawful reentry is a general-intent offense. This argument relies primarily on two statements made by the district court. The first was at the pretrial conference, when the district court denied Bustillos-Perea's motion to reconsider the court's order granting the government's motion to prohibit him from presenting any evidence showing why he reentered the United States. The district court said: "I cannot reconcile the defense as proffered

10

with this offense being a general-intent crime, and for which I've already excluded evidence of a specific reason for [his] most recent reentry." R. vol. III at 30. The second statement was on the day of trial, when the court denied Bustillos-Perea's renewed motion for reconsideration. The court said: "[A]s a matter of law, because this is a general intent crime, any specific intent to come into the United States is irrelevant." *Id.* at 76.

We need not decide whether these statements indicate the district court refused to allow presentation of a duress defense because unlawful reentry is a general-intent offense. If the district court erred, any error was harmless, because as discussed, the court also ruled that Bustillos-Perea had not met his burden to establish the elements of the defense by a preponderance of the evidence. *See* Fed. R. Crim. P. 52(a) ("**Harmless error.** Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

### III.  Conclusion

We affirm the district court's judgments.

Entered for the Court


Nancy L. Moritz
Circuit Judge